**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

| | | |
|---|---|---|
| INFORMATION SYSTEMS & NETWORKS CORPORATION, | * | |
| | * | |
| Plaintiff, | | |
| v. | * | Civil Action No. AW-05-838 |
| UNITED STATES OF AMERICA, | * | |
| Defendant. | * | |

\* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Information Systems & Network Corporation ("Plaintiff" or "ISN") brings this suit against the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b)(1), 2671–2680 (2005) (the "FTCA"), alleging that the negligence and abuse of process by employees and agents of the Defense Contract Audit Agency ("DCAA") and the Defense Contract Management Agency ("DCMA") prevented Plaintiff's government contracts from "closing out," delayed Plaintiff's receipt of final contract payments, and hindered Plaintiff's attempts to obtain future government contracts. Currently pending before the Court is the United States' Motion to Dismiss for Lack of Jurisdiction [13]. The Court has reviewed the entire record, as well as the pleadings with respect to the instant motion and has determined that no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2004). For the reasons stated more fully below, this Court will GRANT the Motion to Dismiss.

## FACTUAL AND PROCEDURAL BACKGROUND

The following facts are taken in the light most favorable to the non-movant. INS is an information technology company, with its principal office in Bethesda, Maryland, that has performed "technology services" and "other professional services" for the United States Government for over two decades. The United States contracted for some of these services through "cost

reimbursement" contracts, which provide for payment of certain allowable incurred costs.[1]  *See* 48 C.F.R. § 16.301-1. It also appears that ISN may have had other fixed-price contracts with the United States.

The Federal Acquisition Regulations (the "FAR") categorize costs as either direct or indirect. The FAR defines a "Direct Cost" as "any cost . . . identified specifically with a particular final cost objective . . . not limited to items that are incorporated in the end product as material or labor." 48 C.F.R. § 2.101.  The FAR defines an "Indirect cost" as "any cost not directly identified with a single final cost objective, but identified with two or more final cost objectives or with at least one intermediate cost objective."  48 C.F.R. § 2.101.

"Beginning as early as 1995 and continuing to August 2002," ISN claims that it submitted indirect cost rate proposals for each year in which it performed contract work.  In addition, ISN alleges that despite its repeated requests, DCAA and DCMA did not establish final indirect rates. Because ISN and these agencies did not reach an agreement as to the final indirect cost rate, the United States Government did not close out more than 250 open contracts, and ISN could not receive payment on final invoices or have certain retainages[2] returned.  According to the Complaint, on February 9, 2005, the DCMA established final rates other than "G&A,"[3] establishing only interim

---

[1] "Cost reimbursement" contracts must specify a ceiling, which a contractor may not exceed without the approval of the contracting officer.  48 C.F.R. § 16.301-1.

[2] A retainage is "a percentage of what a landowner pays a contractor, withheld until the construction has been satisfactorily completed and all mechanic's liens are released or have expired."  Black's Law Dictionary 1317 (7th ed. 1999).  Plaintiff's Complaint, however, does not indicate what the United States required as retainages nor does it specify when, if ever, these retainages were returned.

[3] The Complaint does not define "G&A," but the Court will assume that "G&A" denotes General & Administrative expenses.

G&A rates.  ISN also alleges that DCAA and DCMA contacted other United States Government agencies regarding "ISN's past performance and accounting practices" and advised these agencies not to use ISN as  a contractor because ISN used "indirect rates" in its proposals that had not been approved by DCAA.

On September 2, 2003, ISN served a written notice of administrative claim on the DCAA and the DCMA.  The United States responded to ISN's notice on September 29, 2004, denying ISN's claims.

On March 28, 2005, Plaintiff filed a Complaint with the Court.  The Complaint contains three counts.  Count I is a negligence claim and alleges that DCAA and DCMA officials acted negligently by failing to establish final indirect rates in accordance with the FAR.  Count II is also a negligence claim and asserts that DCAA and DCMA's action resulted in the loss of new contracts.  Count III is claim for abuse of process.

## STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction may be founded on either of two bases.  As with a motion to dismiss under Rule 12(b)(6), a Rule 12(b)(1) motion to dismiss may challenge subject matter jurisdiction by demonstrating that the complaint "fails to allege facts upon which subject matter jurisdiction can be based." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).  With this type of 12(b)(1) motion, the "facts in the complaint are assumed to be true, and the plaintiff, in effect, is afforded the same procedural protection as [it] would receive under a Rule 12(b)(6) consideration." *Id.*

In the alternative, a Rule 12(b)(1) motion may assert a lack of subject matter jurisdiction "in fact" apart from any pleading. *See id.*  In such cases, a court may look beyond the allegations in the

complaint to determine whether any evidence supports the exercise of jurisdiction.  *See Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991); *see also Sharafeldin v. Maryland Dept. of Public Safety & Correctional Services,* 94 F. Supp.2d 680, 684-85 (D. Md. 2000) (when a defendant challenges subject matter jurisdiction on a motion to dismiss, the court may consider evidence outside the pleadings without converting the motion to a motion for summary judgment).

Whether the defendant attacks jurisdiction under the former or latter theory, once the issue of subject matter jurisdiction has been raised, the plaintiff bears the burden of proving that subject matter jurisdiction exists in the federal courts.  *Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999).

## DISCUSSION

"It is well established that the United States Government, as sovereign, is immune from suit unless it consents to be sued."  *Gould v. U.S. Dep't of Health & Human Servs.*, 905 F.2d 738, 741 (4th Cir. 1990).  Congress crafted a limited waiver of the sovereign immunity of the United States in the FTCA, which permits suits against the United States for damages for any injury or loss of property caused by the tortious conduct of federal employees to the same extent that a private person would be liable under state law.  *See* 28 U.S.C. §§ 1346(b)(1), 2674; *see also Gould*, 905 F.2d at 741.  This limited waiver, however, must be construed strictly and bounded by the text of the statute.  *Honda v. Clark*, 386 U.S. 484, 501 (1967); *Kokotis v. United States Postal Serv.*, 223 F.3d 275, 278 (4th Cir. 2000) ("Sovereign immunity can be waived only by the sovereign; the circumstances of its waiver must be scrupulously observed and not expanded by the courts.").

The United States argues that this Court should dismiss Plaintiff's Complaint for several

reasons.  First, the United States contends that Plaintiff's Complaint sets forth a contract dispute

within the purview of the Contract Disputes Act of 1978, 41 U.S.C. §§ 601 to 613, (the "CDA") and

as such, this Court lacks jurisdiction to review Plaintiff's claims.   The CDA represents a

comprehensive statutory scheme for resolving "[a]ll claims by a contractor against the government

relating to a contract." 41 U.S.C. § 605(a); *see also Fireman's Fund Ins. v. England,* 313 F.3d 1344,

1350 (Fed. Cir. 2002).   Under the CDA, a contractor must use the designated procedures to bring

a claim related to a contract against the United States.  A contractor first must submit a claim to the

contracting officer for resolution.  41 U.S.C. § 605(a).  If the contracting officer makes an adverse

determination, the contractor may then appeal the decision to an agency board of contract appeals

or bring a suit on the claim in the United States Court of Federal Claims.  41 U.S.C. § 606,

609(a)(1).  Because the CDA divests federal district courts of jurisdiction over CDA contract

disputes, this Court must dismiss Plaintiff's Complaint if it seeks redress for claims properly brought

under the CDA.  *See*, *e.g., United States v. J & E Salvage Co.,* 55 F.3d 985, 987 (4th Cir. 1995)

("federal district courts lack jurisdiction over government claims against contractors which are

subject to the CDA"); *Texas Health Choice v. OPM,* 400 F.3d 895 (Fed. Cir. 2005) (ruling that

district court lacked jurisdiction where the plaintiff brought suit in district court on CDA claims).

Although Plaintiff asserts that it has set forth independent tort claims, this Court must examine the

evidence to discern whether these claims are merely "disguised contract actions" or contract actions

recast in tort language.  *See J & E Salvage Co.,* 55 F.3d at  987 (internal citations omitted).

It appears clear that the allegations in Count I fall within the ambit of the CDA.  All of

Plaintiff's contracts with the United States contain provisions that state that the failure of the United

States and a contractor to agree on final indirect cost rates is a dispute under the contract, actionable

under the CDA.  *See* Allowable Cost and Payment Clause, 48 C.F.R. § 52.216-7, and Disputes Clause, 48 C.F.R. § 52.233-1.  This Court agrees that to the extent that Plaintiff's Complaint alleges government misconduct in setting a final indirect cost rate, these omissions "relate" to government contracts within the meaning of the CDA.  Because the CDA governs this claim, Plaintiff may pursue this claim only in the Court of Federal Claims, not federal district court.

In Count II, Plaintiff alleges that the misconduct detailed in Count I led to the loss of future government contracts.  Count II appears to set forth Plaintiff's alleged damages rather than a separate cause of action.  This Court finds it noteworthy that despite Plaintiff's contentions that the CDA does not apply to this action, Plaintiff filed a CDA claim, containing many of the same allegations as the instant Complaint.  In particular, Plaintiff filed a CDA claim in March of 2004 that stated that the "genesis of all ISN's contract claims, as set forth in the CDA Claim, was the refusal of defendant to negotiate in good faith and agree with ISN on final overhead rates."  Plaintiff filed another CDA claim on December 14, 2004, predicated on "the Government's fail[ure] to agree upon final indirect rates."  Indeed, this CDA claim also sought to recover for "loss of profit from withheld follow-on contracts, . . . which the Government did not exercise in favor of ISN because ISN did not have final indirect rates."  In the earlier CDA claim, Plaintiff implicitly adopted the position advanced by the United States – that the alleged harm, loss of profits, flowed from disputes under the contracts.

Even if the CDA did not apply to Count II of Plaintiff's Complaint, this Court would dismiss Count II because Plaintiff's Complaint does not allege all of the necessary elements of a common law tort.  As the Maryland law does not recognize a cause of action for "Causing the Loss of New Contracts," the Court will assume that Plaintiff intended to state a claim for the tort of interference

6

with economic relations.  The Maryland Court of Appeals has listed the elements of this tort as ''(1) intentional and wilful acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) actual damage and loss resulting.'' *Willner v. Silverman*, 71 A. 962, 964 (Md. 1909)  At root, this tort provides a remedy for "interference by conduct that is independently wrongful or unlawful, quite apart from its effect on the plaintiff's business relationships.  Wrongful or unlawful acts include common law torts and violence or intimidation, defamation, injurious falsehood or other fraud, violations of criminal law, and the institution or threat of groundless civil suits or criminal prosecutions in bad faith." *Alexander & Alexander, Inc. v. B. Dixon Evander Assocs., Inc.,* 336 Md. 635, 657, 650 A.2d 260 (1994) (citing *K & K Management v. Lee,* 557 A.2d 965, 979 (Md. 1989) (quoting Prosser, *Law of Torts* § 130, 952-953 (4th Ed.1971)) (internal quotation marks omitted).  Not all acts can serve as the basis for an action for interference with economic relations.  For example, mere breach of contract will not give rise to a suit for interference with economic relations.  *See K & K Mgmt*, 557 A.2d at 979-980.  In this case, Plaintiff alleges that the United States negligently failed to establish a final indirect rate.  Plaintiff has explained that the "wrongful act" is "the violation of a required and mandatory obligation to perform."  The caselaw makes clear, however, that a violation of a required obligation to perform  is not a "wrongful act" for the purposes of this tort.  *See id.*

In addition, interference with economic relations requires three parties.  *Id.* at 973.  In Plaintiff's brief in response to the Motion to Dismiss, *Plaintiff* notes that "[t]he wrongful conduct alleged by ISN is by the [contracting officer] or in effect by the government, the other party to the contract.  A party cannot interfere with its own contract . . . Nowhere in ISN's Complaint is there

even an attempt to state any form of interference with a contract claim.  To the contrary, ISN argues that the other party to the government contracts failed to take required and mandatory legal action under FAR.  This does not constitute interference."  Plaintiff concedes that it has not stated a claim for interference for economic relations, but has not identified any other tort recognized by Maryland law that would allow it to recover for "Loss of New Contracts."  Therefore, this Court will also dismiss Count II, finding that it falls within the scope of the CDA and concluding that Plaintiff has not asserted a tort claim under Maryland law.[4]

The United States also urges this Court to dismiss Count III, the claim for abuse of process.  This Court agrees that Count III of the Complaint cannot withstand the United States' Motion to Dismiss, but for reasons different than those argued by the United States.  Although Maryland law recognizes the tort of abuse of process, the FTCA excludes from its waiver of sovereign immunity suits for abuse of process except when the suit involves acts or omissions of "investigative or law enforcement officers" of the federal government.  28 U.S.C. § 2680(h).  To clarify this provision, the FTCA defines an "investigative or law enforcement officer" as "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of federal law."  28 U.S.C. § 2680(h).  Plaintiff baldly asserts that DCAA and DCMA agents are "investigative or law enforcement officers," but offers no authority to support this assertion.

---

[4] The United States also presented other arguments as to why Plaintiff's claims must fail as a matter of law.  The United States argues that Plaintiff's claims are contract claims and therefore not redressable under the FTCA.  The United States also claims that Plaintiff's Complaint fails to state a cognizable claim under the FTCA because the Complaint alleges violations of federal, not state, law.  In the alternative, the United States argues that Plaintiff's Complaint falls within the exception to FTCA for interference with a contract.  As the Court finds that it lacks jurisdiction over Counts I and II because of the applicability of the CDA and because Plaintiff has not stated the elements of *any* state tort law claim, the Court need not address the merits of these arguments at this time.

Plaintiff does not cite to any statute or regulation that empowers DCAA auditors or DCMA employees to "execute searches, to seize evidence, or to make arrests for violations of federal law." In fact, this Court has not found a single published case that holds that either DCAA agents or DCMA qualify as "investigative or law enforcement officers" under the statute.[5]  Accordingly, this Court will dismiss Plaintiff's claim for abuse of process.

## CONCLUSION

For all of the aforementioned reasons, the Court will GRANT Defendant's Motion to Dismiss [13].  An Order consistent with this Opinion will follow.

Date:  <u>January 4, 2006</u>                          <u>                 /s/                 </u>
                                                  Alexander Williams, Jr.
                                                  United States District Court

---

[5]  To the contrary, this Court has found one unpublished case from another jurisdiction that holds that DCAA auditors *are not* "investigative or law enforcement officers" under the FTCA.  *See Bakowski v. Kurimai,* 2000 WL 565230, *3 (D. Conn. 2000) (holding that DCAA agents do not fall under the 28 U.S.C. § 2680(h) exception for law enforcement or investigative officers).